UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JANICE E. BURKE,

                                    Plaintiff,

                                                              5:15-CV-1133
v.                                                            (MAD/TWD)

TOM VONNARD,

                                    Defendant.
_____

APPEARANCES:

JANICE E. BURKE
Plaintiff *pro se*
309 Westfall Street
Syracuse, New York 13209

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

    The Clerk has sent this pro se civil rights complaint, brought pursuant to 42 U.S.C. §§

1981, 1982, and 3604, 29 U.S.C. § 794, and United States Tort Law[1], together with an

application to proceed in *forma pauperis* ("IFP Application") to the Court for review.  (Dkt. Nos.

1 and 2.)

## I.    IFP APPLICATION

    A court may grant *in forma pauperis* status if a party "is unable to pay " the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1) (2006).  After reviewing Plaintiff's IFP

Application (Dkt. No. 2), the Court finds that she meets the standard and her IPF Application is

---

[1] Plaintiff has not identified the United States Tort Law to which she is referring, and the
Court is unaware of any such law applicable to her claim that she was wrongfully evicted by
Defendant.

is granted.[2]

## II.    LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C.

§ 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the

case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not

frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua*

*sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to

---

[2]  Plaintiff should note that although her IFP Application has been granted, she will still
be required to pay fees that she may incur in this action, including copying and/or witness fees.

state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. PLAINTIFF'S COMPLAINT

On September 2, 2011, Plaintiff entered into a written lease with Defendant Tom

Vonnard for a two bedroom apartment at 1214 Milton Avenue. (Dkt. No. 1 at 2.) Plaintiff paid a security deposit and the first month's rent. *Id*. Plaintiff made a number of improvements to the apartment. *Id*.

Plaintiff was employed when she leased the apartment but was released from her job on February 10, 2012. *Id*. Plaintiff continued to pay rent for two months as she looked for new employment. *Id*. On April 1, 2012, an acquaintance who had just been released from a drug rehabilitation facility appeared at Plaintiff's apartment in need of temporary shelter.[3] *Id.* Plaintiff agreed to the temporary arrangement. *Id*. When Defendant came to the apartment to pick up rent on April 5, 2012, he asked about the person staying in her apartment, and Plaintiff explained the temporary arrangement.[4] *Id*.

Plaintiff also explained to Defendant that she had been released from her employment and had only $400.00 of the agreed upon rent of $575.00. *Id*. She told Defendant she was applying for public assistance while looking for employment. *Id*. At Defendant's suggestion, Plaintiff and the acquaintance who was staying with her applied for public assistance as "co-op tenants." *Id*. Within forty-five days, the Department of Social Services ("DSS") issued two checks to Defendant, each in the amount of $287.50, for Plaintiff and her acquaintance as co-tenants. *Id*.

On December 16, 2013, DSS sanctioned Plaintiff for 150 days. *Id*. at 3. Plaintiff requested a fair hearing and explained the situation to Defendant. *Id*. On May 16, 2014, DSS

---

[3] The date alleged in the complaint is April 1, 2011. (Dkt. No. 1 at 2.) Because Plaintiff had not yet leased the apartment in April 2011, the Court has assumed that the intended date is April 1, 2012.

[4] The date set forth in the complaint is April 5, 2011. (Dkt. No. 1 at 2.) Again, the Court has assumed the intended year is 2012.

issued all monies due Defendant.  *Id.*

On April 9, 2014, prior to Plaintiff's fair hearing, National Grid shut off the power in the apartment for lack of payment.  *Id.*  After Plaintiff's sanction was lifted by DDS, she went to HEAP and National Grid to have the power restored.  *Id.*  Plaintiff and Defendant agreed to September 17, 2014[5], for power to be restored.  *Id.*  However, Plaintiff was denied restoration because her co-tenant had been sanctioned and DSS stated that no payment arrangement could be made with National Grid until the co-tenant was cleared.  *Id.*

The co-tenant lost her keys on or about May 16, 2014, and broke a back porch window to gain entry into the apartment.  *Id.*  The co-tenant admitted to Defendant that she had broken the window and agreed to have it repaired.  *Id.*

On September 29, 2014, Plaintiff left the apartment for temporary shelter due to lack of power, mice, chest congestion, and cataracts.  *Id.*  She returned to the apartment several times and discovered that her key no longer worked.  *Id.*  When Plaintiff called Defendant, he informed her that she and her co-tenant had been evicted for non-payment of rent on October 31, 2014.[6]  *Id.*  Plaintiff informed Defendant that her share of the rent had been paid, along with November and December rent, and that she had not been served with eviction papers, which Defendant told her had been placed on the apartment door.  *Id.*  Plaintiff requested a copy of the eviction notice, and it was faxed to her three days later.  *Id.*

---

[5]  September 17, 2014, is the date set forth in the complaint.  (Dkt. No. 1 at 3.)  Inasmuch as DSS issued all rent monies due Defendant May 16, 2014, it is unclear why power would not be restored until September 17, 2014.  *Id.*

[6]  The date set forth in the complaint is October 31, 2011.  (Dkt. No. 1 at 4.)  Given the chronological order in which the allegations in the complaint are set forth, the Court has assumed the intended year is 2014.

Plaintiff contends that Defendant: (1) falsified documents to be granted eviction; (2) was aware that the total contents of the apartment, excluding the co-tenant's clothes, were Plaintiff's; (3) was aware that once Plaintiff and her co-tenant entered into a co-op tenant agreement, the living arrangement was no longer temporary, and that as landlord he was the only one who could have the co-tenant removed for non-payment of rent; (4) denied Plaintiff, who had not defaulted, entry into the apartment after he had accepted rent for November and December of 2014 and denied her the right to move or obtain another tenant to share the rent costs; (5) maliciously disposed of Plaintiff's belongings including items of sentimental value, her high school and college diplomas, confidential documents such as her birth certificate and social security card, and her computer and laptop, which were placed out in the street; and (6) failed to return her security deposit based on falsified documents filed in court. *Id*. at 3-4.

Plaintiff claims that as a result of Defendant's actions, she is experiencing severe mental depression, apathy, and muscle loss due to the inability to utilize the commercial exercise equipment she had purchased and kept in her apartment. *Id*. at 4. According to Plaintiff, she has been forced to use prescription drugs to alleviate pain and swelling due to the lack of physical exercise. *Id.*

Plaintiff seeks as relief a letter of apology from Defendant, all applicable punishment for the offenses alleged, and any other relief the court deems applicable for the loss of Plaintiff's belongings, which are identified in an attachment to the complaint. *Id*. at 5-11.

IV.    **ANALYSIS**

A.    **Plaintiff's Claim under 42 U.S.C. §§ 1981 and 1982**

Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States

shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  To establish a claim under § 1981, a plaintiff must show that (1) he is a member of a protected class; (2) defendant intended to discriminate against plaintiff based upon his membership in the protected class; and (3) the discrimination concerned one or more of the activities enumerated in § 1981.  *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000).  Like the Equal Protection Clause, § 1981 can only be violated by purposeful discrimination.  *Gen. Bldg. Contractor's Assn., Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

42 U.S.C. § 1982 states that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  Section 1982 has been interpreted to prohibit "intentional discrimination" based on race.  *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617 (1987) (citation omitted).

Plaintiff has not identified her race or alleged in her complaint that she is a member of a protected class.  Nor has she set forth facts plausibly showing that Defendant intended to discriminate against her based upon her race or membership in some other protected class.  Therefore, the Court finds that Plaintiff has failed to state a claim under 42 U.S.C. §§ 1981 and 1982.  *See Francis v. Kings Park Manor, Inc.*, No. 14-cv-3555 (ADS) (GRB), 2015 WL 1189579, at * 4 , 2015 U.S. Dist. LEXIS 31787, at * 8-9  E.D.N.Y. March 16, 2015)[7] (to state a

_____

[7] Copies of the unpublished decision will be provided to Plaintiff in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

claim for racial discrimination under §§ 1981 or 1982, a plaintiff must allege intentional

discrimination on the part of the defendant) (citation and internal quotation marks omitted).

**B.**      **Plaintiff's Fair Housing Act Claim**

The Fair Housing Act ("FHA"), enacted as Title VIII of the Civil Rights Act of 1968, as

amended, imposes liability on private actors who discriminate against protected class members

in the real estate market. 42 U.S.C. §§ 3601, *et seq*. The FHA provides a private right of action

for enforcement. 42 U.S.C. § 3613.

Section 3604 of the FHA prohibits private actors in the housing market from engaging in

certain discriminatory actions regarding those seeking housing. More specifically, § 3604(a)

makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to

negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any

person because of race, color, religion, sex, familial status, or national origin." Section 3604(b)

makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of

sale or rental of a dwelling, or in the provision of services or facilities in connection therewith,

because of race, color, religion, sex, familial status, or national origin." Section 3604(f)(1)

makes it unlawful "[t]o discriminate in the sale or rental, or otherwise to make unavailable or

deny a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter, (B) a

person residing in or intending to reside in that dwelling after it is so sold, rented, or made

available; or (C) any person associated with that buyer or renter."

Plaintiff has not alleged in her complaint that Defendant evicted her from the Milton

Avenue apartment because of race, color, religion, sex, familial status, national origin, or because

of a handicap. (Dkt. No. 1.) Therefore, the Court finds that Plaintiff has failed to state a claim

under § 3604 of the FHA.

**C.    Rehabilitation Act Claim**

Section 504 of the Rehabilitation Act provides in pertinent part that [n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a); *Bryant v. N.Y.S. Educ. Dept.*, 692 F.3d 202, 216 (2d Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S.Ct. 2022 (2013).

Plaintiff has failed to allege that she is handicapped or that Defendant evicted her solely because of a handicap for purposes of stating a claim under the Rehabilitation Act.  Furthermore, Plaintiff's complaint does not set forth facts plausibly showing the receipt of federal financial assistance in connection with her rental of the Milton Avenue apartment or eviction by Defendant.

Plaintiff has alleged that she was the recipient of public assistance and that DSS issued checks to Defendant for rent for Plaintiff and her co-tenant.  (Dkt. No. 1 at ¶ 4.)  However, those allegations are insufficient to state a claim against Defendant under the Rehabilitation Act.  *See Reyes v. Fairfield Properties*, 661 F.Supp. 2d 249, 264 (E.D.N.Y. 2009) (recognizing that "an entity or person who received housing assistance payments under a housing assistance payments program or a voucher program is not a 'recipient' of federal financial assistance by virtue of receipt of such payments.") (citation omitted); 24 C.F.R. § 8.3 ("An entity or person receiving housing assistance payments from a recipient on behalf of eligible families under a housing assistance payments program or a voucher program is not recipient or subrecipient merely by

virtue of receipt of such payments.")

Based upon the foregoing, the Court finds that Plaintiff has failed to state a claim under the Rehabilitation Act.

### D.  Lack of Subject Matter Jurisdiction Over Plaintiff's Eviction Claim

Federal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005).  Federal jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  In order to invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States.  28 U.S.C. § 1331.

When a court lacks subject matter jurisdiction, dismissal is mandatory. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  Therefore, a plaintiff, even if appearing pro se, must establish that the court has subject matter jurisdiction. *Ally v. Sukkar*, 128 F. App'x 194, 195 (2d Cir. 2005) ("Although we construe a pro se plaintiff's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action.") (citations omitted).

The allegations in Plaintiff's complaint are akin to a state law claim for wrongful eviction.  Federal courts, unlike state courts, have no jurisdiction over landlord-tenant matters. *See Galland v. Margules*, No. 05-CV-5639 (DC), 2005 WL 1981568, at * 1, 2005 U.S. Dist. LEXIS 17125, at * 4 (S.D.N.Y. Aug. 17, 2005) (noting that federal courts do not have federal

question jurisdiction over state residential landlord-tenant matters), *aff'd*, 191 F. App'x 23 (2d Cir. 2006); *see also Rosen v. Shore Towers Apartments, Inc.*, No. 11-CV-0752 (RRM) (LB), 2011 WL 2550733, at * 5, 2011 U.S. Dist. LEXIS 68412, at * 11 (E.D.N.Y. June 27, 2011) (noting that courts in this Circuit "routinely dismiss for lack of subject matter jurisdiction" claims concerning eviction (collecting cases)). Therefore, the federal court has no jurisdiction over Plaintiff's state law wrongful eviction claim.[8]

## IV.  CONCLUSION

Based upon the foregoing, the Court has concluded that Plaintiff has failed to state a claim under 42 U.S.C. §§ 1981 and 1982, the FHA, and the Rehabilitation Act. The Court has further found that there is no subject matter jurisdiction over her state law claim for wrongful eviction. Therefore, the Court recommends that Plaintiff's complaint be dismissed for failure to state a claim with leave to amend.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED WITH LEAVE TO AMEND** for failure to state a claim upon initial review under 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**RECOMMENDED** that the District Court **DECLINE WITHOUT PREJUDICE** to exercise supplemental jurisdiction over Plaintiff's state law wrongful eviction claim; and it is

**ORDERED**, that the Clerk send Plaintiff a copy of this Order and Report-

---

[8]  Because the Court is recommending dismissal of Plaintiff's federal claims, it recommends that the District Court decline without prejudice to exercise supplemental jurisdiction over Plaintiff's state law wrongful eviction claim.

Recommendation, along with copies of the unpublished decisions cited herein, in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: September 25, 2015
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2015 WL 1189579
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Donahue FRANCIS, Plaintiff,

v.

KINGS PARK MANOR, INC., Corrinne
Downing, and Raymond Endres, Defendants.

No. 14–cv–3555 (ADS)(GRB).
|
Signed March 16, 2015.

**Synopsis**

**Background:** African–American apartment resident
commenced action against property management company
for his apartment complex, its alleged agent, and his
neighbor for declaratory judgment, permanent injunctive
relief, damages, costs, and attorney fees, alleging continuing
pattern of racially discriminatory conduct in violation of
§§ 1981 and 1982 and Fair Housing Act (FHA). Resident
also asserted causes of action for breach of contract
and negligent infliction of emotional distress. Property
management company and its alleged agent filed motion to
dismiss for failure to state a claim.

**Holdings:** The District Court, Spatt, J., held that:

[1] tenant failed to state plausible § 1981 and § 1982 claims
against property management company and its alleged agent;

[2] tenant failed to state plausible hostile housing
environment claim against those parties under FHA;

[3] tenant failed to state plausible claim against those parties
under New York State Human Rights Law (NYSHRL);

[4] tenant failed to state plausible claim against those parties
for negligent infliction of emotional distress; and

[5] tenant stated plausible claim against property management
company for breach of statutorily implied warranty of
habitability.

Motion granted in part and denied in part.

West Headnotes (23)

[1]     **Federal Civil Procedure**
        👉 Insufficiency in general

        To survive motion to dismiss for failure to
        state a claim, plaintiff must provide grounds
        upon which their claim rests through factual
        allegations sufficient to raise a right to relief
        above the speculative level; in other words,
        complaint must allege enough facts to state a
        claim to relief that is plausible on its face.
        Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

        Cases that cite this headnote

[2]     **Federal Civil Procedure**
        👉 Insufficiency in general

        Claim has facial plausibility, as required to
        survive motion to dismiss for failure to state a
        claim, when the plaintiff pleads factual content
        that allows the court to draw the reasonable
        inference that the defendant is liable for the
        misconduct alleged. Fed.Rules Civ.Proc.Rule
        12(b)(6), 28 U.S.C.A.

        Cases that cite this headnote

[3]     **Federal Civil Procedure**
        👉 Matters considered in general

        In adjudicating motion to dismiss for failure
        to state a claim, district court must confine
        its consideration to facts stated on the face of
        the complaint, in documents appended to the
        complaint or incorporated in the complaint by
        reference, and to matters of which judicial notice
        may be taken. Fed.Rules Civ.Proc.Rule 12(b)(6),
        28 U.S.C.A.

        Cases that cite this headnote

[4]     **Civil Rights**
        👉 Discrimination in General
        **Civil Rights**
        👉 Property rights

To state a claim for racial discrimination under §
1981 or § 1982, a plaintiff must allege intentional
discrimination on the part of the defendant. 42
U.S.C.A. §§ 1981, 1982.

Cases that cite this headnote

**[5]** **Civil Rights**
   **Complaint in general**

For § 1981 claim to withstand dismissal,
the events of the intentional and purposeful
discrimination, as well as the racial animus
constituting the motivating factor for the
defendant's actions must be specifically pleaded
in the complaint. 42 U.S.C.A. § 1981.

Cases that cite this headnote

**[6]** **Civil Rights**
   **Property and housing**

African-American apartment tenant failed to
state plausible § 1981 and § 1982 claims
against property management company and its
alleged agent, as he did not allege specific
facts sufficient to support inference that they,
rather than cotenant, intentionally discriminated
against him on the basis of his race; tenant's
naked assertions that his race was a motivating
factor in their alleged failure to intervene,
without fact-specific allegation of causal link
between their conduct and tenant's race, were too
conclusory. 42 U.S.C.A. §§ 1981, 1982.

Cases that cite this headnote

**[7]** **Civil Rights**
   **Interference, coercion, or intimidation;**
   **retaliation**
   **Civil Rights**
   **Property and housing**

Fair Housing Act (FHA) safeguards members
of protected class from coercion, intimidation,
threats, or interference in the exercise or
enjoyment of their fair housing rights and it
protects third parties, not necessarily members
of the protected class, who aid or encourage
protected class members in the exercise or

enjoyment of their FHA rights. Fair Housing Act,
§§ 804(b), 818, 42 U.S.C.A. §§ 3604(b), 3617.

Cases that cite this headnote

**[8]** **Civil Rights**
   **Property and housing**

Under the Fair Housing Act (FHA), owners
of real estate may be held vicariously liable
for discriminatory acts by their agents and
employees. Fair Housing Act, § 801 et seq., 42
U.S.C.A. § 3601 et seq.

Cases that cite this headnote

**[9]** **Civil Rights**
   **Housing**

Fair Housing Act (FHA) prohibits certain types
of post-acquisition discrimination. Fair Housing
Act, § 818, 42 U.S.C.A. § 3617.

Cases that cite this headnote

**[10]** **Civil Rights**
   **Harassment; hostile environment**

Fair Housing Act (FHA) prohibits the creation of
a hostile environment by individuals who have
control or authority over the terms, conditions, or
privileges of sale or rental of a dwelling, similar
to the prohibition imposed by Title VII against
the creation of a hostile work environment. Civil
Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. §
2000e–2(a)(1); Fair Housing Act, § 804(b), 42
U.S.C.A. § 3604(b).

Cases that cite this headnote

**[11]** **Civil Rights**
   **Hostile environment; severity,**
   **pervasiveness, and frequency**

In employee-employer context, Title VII
plaintiff seeking to state hostile work
environment claim must establish that (1) he
or she was subjected to harassment that was
sufficiently pervasive and severe so as to create
a hostile work environment, (2) the harassment
was because of the plaintiff's membership in
a protected class, and (3) a basis exists for

imputing the allegedly harassing conduct to the defendants. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

Cases that cite this headnote

[12]    **Civil Rights**
    Knowledge or notice;  preventive or remedial measures

In employee-employer context, employer is liable for hostile work environment in the workplace when employer knew, or should have known, of the hostile work environment but failed to take appropriate remedial action; sufficiency of employer's remedial actions is evaluated under totality of the circumstances. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

Cases that cite this headnote

[13]    **Civil Rights**
    Harassment;  hostile environment

A tenant may not assert an actionable claim for hostile housing environment under the Fair Housing Act (FHA) against the landlord based on harassment by a cotenant where the landlord is simply made aware of the harassment but fails to take corrective action. Fair Housing Act, §§ 804(b), 818, 42 U.S.C.A. §§ 3604(b), 3617.

Cases that cite this headnote

[14]    **Civil Rights**
    Harassment;  hostile environment

Tenant failed to state plausible hostile housing environment claim against property management company and its alleged agent under Fair Housing Act (FHA); assuming, without deciding, that hostile housing environment claim was actionable against landlord or property owner under FHA, such a claim would require allegations of intentional discriminatory conduct, or failure to intervene, by landlord or property owner based on a protected category. Fair Housing Act, §§ 804(b), 818, 42 U.S.C.A. §§ 3604(b), 3617.

Cases that cite this headnote

[15]    **Civil Rights**
    Persons Protected, Persons Liable, and Parties

African-American tenant failed to state plausible claim against property management company or its alleged agent under New York State Human Rights Law (NYSHRL) provision making it unlawful to discriminate because of race in terms, conditions or privilege of rental, or under aiding and abetting provision; there was no evidence of those defendants' own racial animus toward tenant and no plausible allegation that they actually participated in cotenant's alleged racially discriminatory conduct. N.Y.McKinney's Executive Law § 296(5)(a)(2), (6).

Cases that cite this headnote

[16]    **Civil Rights**
    Housing

Claims under Fair Housing Act (FHA) and New York State Human Rights Law (NYSHRL) are evaluated under the same framework. Fair Housing Act, § 801 et seq., 42 U.S.C.A. § 3601 et seq.; N.Y.McKinney's Executive Law § 296.

Cases that cite this headnote

[17]    **Damages**
    Negligent Infliction of Emotional Distress

Under New York law, tort of negligent infliction of emotional distress has four elements: (1) breach of duty owed to plaintiff, which breach either unreasonably endangered plaintiff's physical safety or caused plaintiff to fear for his or her physical safety, (2) extreme and outrageous conduct, (3) causal connection between conduct and injury, and (4) severe emotional distress.

Cases that cite this headnote

[18]    **Landlord and Tenant**
    Protection against acts of third persons

In New York, landlord has no common law duty to prevent one tenant from attacking another tenant unless it has the authority, ability, and opportunity to control the actions of the assailant.

Cases that cite this headnote

**[19]    Damages**
     👈 Particular cases

Under New York law, African-American tenant failed to state plausible claim for negligent infliction of emotional distress against property management company or its alleged agent, as he did not adequately plead existing common law duty of care owed by those parties toward him; mere fact that they were allegedly made aware of cotenant's underlying verbal abuse and threats of physical assault did not trigger common law duty on their part to investigate and intervene.

Cases that cite this headnote

**[20]    Contracts**
     👈 Grounds of action

Under New York law, the elements of a cause of action for breach of contract are (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach.

Cases that cite this headnote

**[21]    Landlord and Tenant**
     👈 Warranty of habitability

Under New York law, tenant may state claim for breach of statutorily implied warranty of habitability against landlord for failure to intervene in response to harassing behavior by cotenant. N.Y.McKinney's Real Property Law § 235–b.

Cases that cite this headnote

**[22]    Landlord and Tenant**
     👈 Warranty of habitability

Statutory warranty of habitability protects against conditions that materially affect the health and safety of tenants or deficiencies that in

the eyes of a reasonable person deprive the tenant of those essential functions which a residence is expected to provide. N.Y.McKinney's Real Property Law § 235–b.

Cases that cite this headnote

**[23]    Landlord and Tenant**
     👈 Warranty of habitability

African-American apartment tenant adequately pled claim against property management company for breach of New York's statutorily implied warranty of habitability based on its ignoral of tenant's repeated requests to intervene in response to cotenant's racially harassing behavior; tenant's election to renew his lease during period of complained-of harassment did not, as matter of law, bar his claim. N.Y.McKinney's Real Property Law § 235–b.

Cases that cite this headnote

**Attorneys and Law Firms**

Relman, Dane & Colfax PLLC, by: John P. Relman, Esq., Timothy Smyth, Esq., Yiyang Wu, Esq., Ryan C. Downer, Esq., of Counsel, Washington, DC, for the Plaintiff.

Somer & Heller, LLP, by: Stanley J. Somer, Esq., Melissa Corwin, Esq., of Counsel, Commack, NY, for the Defendant Kings Park Manor, Inc. and Corrine Downing.

No Appearances: The Defendant Raymond Endres.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

***1** On June 5, 2014, the Plaintiff Donahue Francis (the "Plaintiff") commenced this action for a declaratory judgment, permanent injunctive relief, damages, costs, and attorneys' fees, alleging a continuing pattern of racially discriminatory conduct in violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, and the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601–19 (the "FHA"). The Plaintiff also asserts causes of action for breach of contract and negligent infliction of emotional distress.

On July 16, 2014, the Clerk of the Court noted the default of the Defendant Raymond Endres ("Endres"). The Plaintiff has yet to move for a default judgment against Endres.

On August 1, 2014, the Defendants Kings Park Manor, Inc. ("KPM") and Corrine Downing ("Downing")(collectively the "KPM Defendants") moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6) to dismiss the complaint as against them for failure to state a claim upon which relief can be granted.

For the reasons set forth, the motion to dismiss filed by the KPM Defendants is granted in part and denied in part.


# I. BACKGROUND

Unless stated otherwise, the following factual allegations are drawn from the complaint and construed in a light most favorably to the non-moving party, the Plaintiff.


**A.** *The Parties*

The Plaintiff is an African–American male who self-identifies himself as black. At all relevant times, the Plaintiff resided at Kings Park Manor Apartment Complex (the "Complex"), at 186 Ardito Avenue, Unit # 186, Kings Park, New York 11754.

KPM is a New York corporation that owns Unit # 186 and acts as the property management company for the Complex.

Downing, an agent and employee of KPM, is the property manager of the Complex.

Endres, at all relevant times until January 28, 2013, resided at 184 Ardito Avenue, Unit # 184, Kings Park, New York, 11754.


**B.** *Factual Allegations*

On April 21, 2010, the Plaintiff and agents of KPM signed a lease agreement.

On May 1, 2010, the Plaintiff and agents of KPM signed a second lease agreement to rent Unit 186 at the Complex. The May 1, 2010 lease was signed by Downing as "Landlord/ Agent: Kings Park Manor." The lease was renewed three times.

The Plaintiff participated in the Housing Choice Voucher Program, 42 U.S.C. § 1437f(*o* )et seq., commonly known as "Section 8."

The Plaintiff moved into Unit # 186 at 186 Ardito Avenue. The Plaintiff's first eighteen months at the Complex were uneventful.

However, according to the Plaintiff, in February 2012, the Plaintiff heard his next door neighbor, the Defendant Endres, say "Jews, fucking Jews" and called him a "fucking nigger." (Compl., at ¶ 16.) The Plaintiff was shocked and fearful, but did not respond.

On March 3, 2012, Endres approached the front of their respective apartments and said "damn fucking Jews." (*Id.* at ¶ 18.) He looked toward the Plaintiff's open door and at the Plaintiff and said "fucking asshole." (*Id.*) The Plaintiff understood this insult to be directed towards him.

 **\*2** On March 10, 2012, the Plaintiff overheard Endres and another tenant discussing him in derogatory terms.

On March 11, 2012, Endres threateningly approached him and called him a "nigger" several times. Endres stated "fucking nigger, close your god-darn, fucking lazy, god-damn fucking nigger."(*Id.* at ¶ 20.) The Plaintiff phoned 911, and in response, Suffolk County Police Hate Crimes Unit Officer Patricia E. Keller ("Keller") arrived at the scene, interviewed witnesses, and spoke to Endres, admonishing him about the alleged racial epithets towards the Plaintiff. The Plaintiff filed a police report.

On March 20, 2012, the Plaintiff encountered Endres in the parking lot at the Complex. Before driving away, Endres repeatedly used the word "nigger" to insult and denigrate the Plaintiff. The Plaintiff experienced fear and anxiety.

Upon information and belief, the Plaintiff alleges that Keller communicated with KPM, by and through Downing, concerning the March 2012 incidents. KPM allegedly took no actions or steps to investigate the situation.

On May 14, 2014, Endres stood in front of the Plaintiff's front door and yelled "fuck you," apparently because he wanted the Plaintiff to close his front door.

On May 15, 2012, Endres again approached the Plaintiff as he was leaving his residence and said "keep your door closed you fucking nigger."(*Id.* at ¶ 29.)

On May 22, 2012, Endres told the Plaintiff: "I oughta kill you, you fucking nigger."(*Id.* at ¶ 30.) The Plaintiff filed another police report.

By certified mail return receipt requested dated May 23, 2012, the Plaintiff notified the KPM Defendants of Endres' racial threats and harassment. The letter provided details concerning the Suffolk County Police Hate Crimes Unit's investigation, including the names, badge numbers, and contact information of the relevant officers.

The Plaintiff alleges that KPM could have terminated the Endres lease based on his conduct, yet they did not do so, nor did they take any actions or steps reasonably calculated to address the Plaintiff's complaints of harassment.

On August 10, 2012, Endres called the Plaintiff a "fucking nigger" and a "black bastard." (*Id.* at ¶ 36.) The Plaintiff again contacted the Suffolk County Police Hate Crimes Unit.

Soon after, the Suffolk County Police arrested Endres and charged him with, among other counts, aggravated harassment, a class A misdemeanor.

By certified mail return receipt requested dated August 10, 2012, the Plaintiff notified the KPM Defendants of Endres' arrest and his continued use of racial slurs. The Plaintiff also provided the name and address of a Suffolk County Police Hate Crimes Unit Detective, Lola Quesada. Again, according to the Plaintiff, KPM could have terminated the Endres lease based on his conduct, yet they did not do so, nor did they take any actions or steps reasonably calculated to address the Plaintiff's complaints of harassment.

 **\*3** On September 2, 2012, Endres appeared at the Plaintiff's front door and took a series of pictures of the inside of the Plaintiff's apartment. The Plaintiff again contacted the Suffolk County Police Hate Crimes Unit.

By certified mail return receipt request dated September 3, 2012, the Plaintiff notified the KPM Defendants' of Endres' continued harassment. Again, according to the Plaintiff, KPM could have terminated the Endres lease based on his conduct, yet they did not do so, nor did they take any actions or steps

reasonably calculated to address the Plaintiff's complaints of harassment.

As confirmed by a New York State Division of Human Rights ("NYSDHR") Investigator, Downing contacted the owners of Kings Park, Inc. concerning Endres' discriminatory conduct and was told by the owners not to get involved.

The Plaintiff alleges, upon information and belief, that Endres' lease expired on January 25, 2013 and that he vacated the Complex on January 28, 2013.

On April 2, 2013, Endres pled guilty to harassment under New York Penal Law § 240.26(1). In addition, an order of protection was entered prohibiting Endres from having any contact with the Plaintiff.

### C. *Procedural History*

On June 5, 2014, the Plaintiff commenced this action. As against all the Defendants, he raises claims under the Civil Rights Act of 1866, the FHA, New York Executive Law § 296(5) and § 296(6), and negligent infliction of emotional distress. As against the KPM Defendants only, the Plaintiff raises a claim of breach of contract. As against Endres only, who has defaulted, the Plaintiff raises a claim of intentional infliction of emotional distress.

As noted above, on August 1, 2014, the KPM Defendants moved to dismiss the complaint as against them.

## II. BACKGROUND

### A. *The Legal Standard Governing a Rule 12(b)(6) Motion*

 **[1]**  **[2]**  Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide grounds upon which their claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'"*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."*Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir.2010) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955)."A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**[3]** "[I]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'"*Bebry v. ALJAC LLC,* 954 F.Supp.2d 173, 176 (E.D.N.Y.2013) (quoting *Leonard F. v. Israel Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (quoting *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991))).

### B. *The Claims Under the Civil Rights Act of 1866*

**\*4** One portion of the Civil Rights Act of 1866 relevant to the Plaintiff's claim is codified at 42 U.S.C. § 1981, which provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...."42 U.S.C. § 1981(a). Section 1982 of the Civil Rights Act of 1866 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."42 U.S.C. § 1982; *MHANY Mgmt. Inc. v. Inc. Vill. of Garden City,* 985 F.Supp.2d 390, 410 (E.D.N.Y.2013) (quoting Section 1982).

**[4]** **[5]** "To state a claim for racial discrimination under §§ 1981 or 1982, a plaintiff must allege intentional discrimination on the part of the defendant."*Samuels v. William Morris Agency,* No. 10 CIV. 7805(DAB), 2011 WL 2946708, at \*4 (S.D.N.Y. July 19, 2011) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec.,* 7 F.3d 1085 (2d Cir.1993)); *Perry v. State of New York,* No. 08 Civ. 4610(PKC), 2009 WL 2575713 (S.D.N.Y. Aug. 20, 2009) ("A plaintiff is required to set forth factual circumstances from which discriminatory motive can be inferred.... In the absence of such allegations, dismissal at the pleading stage is warranted.")(internal citations omitted). Indeed, for the Plaintiff's Section 1981 claim to withstand dismissal, "the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint."*Yusuf v. Vassar College,* 827 F.Supp. 952, 955 (S.D.N.Y.1993) (citation omitted), *aff'd in part, rev'd in part on other grounds,*35 F.3d 709 (2d Cir.1994).

**[6]** In this action, the Court finds that the Plaintiff has failed to allege specific facts sufficient to support an inference that the KPM Defendants, rather than Endres, intentionally discriminated against him on the basis of his race. Indeed, the Plaintiff makes no allegation of derogatory remarks directed at him by a KPM agent, disparate treatment based on race, or any allegations of circumstantial evidence supporting an inference of discrimination on basis of race.

Here, "[the] naked assertion[s] by [the P]laintiff that race was a motivating factor [in the alleged failure to intervene by the KPM Defendants] without a fact-specific allegation of a causal link between [KPM Defendants'] conduct and the [P]laintiff's race [are] too conclusory." *Hardin v. Meridien Foods,* No. 98 Civ. 2268(BSJ), 2001 WL 1150344 at \*8 (S.D.N.Y. Sep. 27, 2001) (quoting *Yusuf,* 827 F.Supp. at 955–56) (citation omitted); *see also Albert v. Carovano,* 851 F.2d 561, 562 (2d Cir.1988) ("naked allegation" that the defendants selectively enforced college rules against the plaintiffs because they were black or Latino is "too conclusory to survive a motion to dismiss"). Accordingly, the Court grants that part of the motion by the KPM Defendants' dismissing the Section 1981 and Section 1982 claims as against them.

### C. *The FHA claims*

**\*5** The FHA provides that "it shall be unlawful ... to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race ..."42 U.S.C. § 3604(b).

The FHA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section ... 3604[.]"42 U.S.C. § 3617.

**[7]** "Accordingly, the statute 'safeguards members of the protected class from coercion, intimidation, threats, or interference in the exercise or enjoyment of their Fair Housing Rights ... [and] it protects third parties, not necessarily members of the protected class, who aid or encourage protected class members in the exercise or enjoyment of their Fair Housing Act rights.'"*Wilson v. Wilder Balter Partners, Inc.,* No. 13–CV–2595 (KMK), 2015 WL 685194, at \*8

(S.D.N.Y. Feb. 17, 2015) (quoting *Frazier v. Rominger,* 27 F.3d 828, 833 (2d Cir.1994) (citations omitted)).

As an initial matter, the Court notes that the Plaintiff also brings an FHA claim against the Defendant-in-default Endres, but that claim is not subject to the instant motion, so the Court does not address it.

**[8]** "It is clear that under the FHA, owners of real estate may be held vicariously liable for discriminatory acts by their agents and employees."*Glover v. Jones,* 522 F.Supp.2d 496, 506 (W.D.N.Y.2007). However, as described later, a novel question arises here because the alleged discriminatory acts were carried out by the Plaintiff's co-tenant, not anybody alleged to be a KPM agent or employee.

**[9]** Further, "[i]t is unclear to what extent the FHA prohibits "post-acquisition" discrimination—that is, discrimination that occurs after a putative plaintiff acquires housing. District courts in this Circuit have held that § 3617 prohibits certain types of post-acquisition discrimination."*Haber v. ASN 50th St. LLC,* 847 F.Supp.2d 578, 584 n. 3 (S.D.N.Y.2012); *see Davis v. City of New York,* 902 F.Supp.2d 405, 436 (S.D.N.Y.2012) ("I conclude that the law is best understood to prohibit post as well as pre-acquisition discrimination in the provision of housing-related services."); *Ohana v. 180 Prospect Place Realty Corp.,* 996 F.Supp. 238, 239 (E.D.N.Y.1998) (holding that FHA not only "protects individuals from discrimination in the acquisition of their residences because of race, color, religion, sex, familial status, or national origin, but also protects them," through § 3617, "from interference by their neighbors for such discriminatory reasons in the peaceful enjoyment of their homes"); *Puglisi v. Underhill Park Taxpayer Ass'n,* 947 F.Supp. 673, 696 (S.D.N.Y.1996) (holding that nonminority landlord accusing neighborhood association of attempting to force him to evict his minority tenants had standing to sue under § 3617).

**\*6** Also, "the Second Circuit has yet to rule on whether §§ 3604(a) and (b) also prohibit post-acquisition harassment, as the only substantive opinion touching upon this issue merely assumed for the purposes of argument, without actually holding, that a post-acquisition harassment claim could be made."*Haber,* 847 F.Supp.2d at 584 (citing *Khalil v. Farash Corp.,* 277 Fed.Appx. 81, 84 (2d Cir.2008) ("[a]ssuming, without deciding, that a plaintiff may state an FHA claim of discrimination against families with children based on a hostile housing environment theory")).

**[10]** "Courts in this Circuit have construed § 3604(b) of the FHA to prohibit the *creation* of a 'hostile environment' by individuals who have control or authority over the 'terms, conditions, or privileges of sale or rental of a dwelling,' similar to the prohibition imposed by Title VII against the creation of a hostile work environment."*Cain v. Rambert,* No. 13–CV–5807 (MKB), 2014 WL 2440596, at *4 (E.D.N.Y. May 30, 2014) (emphasis added); *Anonymous v. Goddard Riverside Cmty. Ctr., Inc.,* No. 96–CV–9198 (SAS), 1997 WL 475165, at *4 (S.D.N.Y. July 18, 1997) ("The Second Circuit has repeatedly recognized that Title VII (employment discrimination) cases are relevant to Title VIII (housing discrimination) cases by virtue of the fact that the 'two statutes are part of a coordinated scheme of federal civil rights laws enacted to end discrimination.'") (quoting *Huntington Branch, NAACP v. Town of Huntington,* 844 F.2d 926, 934 (2d Cir.1988)).

**[11]** In the employee-employer context, a plaintiff seeking to state such a hostile work environment claim must establish that (1) "[he or] she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile [housing] environment,"*Rich v. Lubin,* No. 02 CIV. 6786(TPG), 2004 WL 1124662, at *4 (S.D.N.Y. May 20, 2004), (2) the harassment was because of the plaintiff's membership in a protected class, *Rivera v. Rochester Genesee Reg'l Transp. Auth.,* 743 F.3d 11, 20 (2d Cir.2014), and (3) "a basis exists for imputing the allegedly harassing conduct to the defendants,"*Rich,* 2004 WL 1124662, at *4.

The main question here is, assuming a hostile housing environment claim is actionable under the FHA, what allegations are necessary under that statute to impute the conduct of a co-tenant to the landlord. The KPM Defendants contend that, even if a hostile housing environment theory of liability against landlords is viable under the FHA, a plaintiff must allege that the landlord or its agents acted, or failed to act, due to animus based on a protected category.

**[12]** In the employee-employer context, "[a]n employer is liable for a hostile work environment in the workplace when the employer knew, or should have known, of the hostile work environment but failed to take appropriate remedial action."*D'Annunzio v. Ayken, Inc.,* 25 F.Supp.3d 281 (E.D.N.Y.2014); *see Duch v. Jakubek,* 588 F.3d 757, 763 (2d Cir.2009); *Howley v. Town of Stratford,* 217 F.3d 141, 154 (2d Cir.2000) (an employer is liable if it failed to provide a reasonable avenue for complaint or if it knew, or in the exercise of reasonable care should have known, about the

harassment yet failed to take appropriate remedial action). The sufficiency of an employer's remedial actions is evaluated under the totality of the circumstances. *Duch,* 588 F.3d at 766.

**\*7** It is true that the FHA is often interpreted similarly to Title VII. However, while it is well-settled that a hostile work environment claim may be brought under Title VII, it is not clear that this theory is viable under all federal civil rights statutes. Indeed, whether such a claim is actionable under the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* (the "ADA") has not been decided yet by the Second Circuit. *Giambattista v. Am. Airlines, Inc.,* 584 Fed.Appx. 23, 26 n. 1 (2d Cir.2014) ("[t]his court has not yet decided whether a hostile work environment claim is actionable under the ADA").

In any case, as noted above, the districts courts in this Circuit have recognized a hostile housing environment claim against a landlord under the FHA only where the landlord "created" the conditions of harassment, rather than was merely notified about it and failed to take corrective action. This is presumably due to the well-known legal distinctions between the employer-employee relationship and the landlord-tenant relationship—including, that an employee is considered an agent of the employer while the tenant is not considered an agent of the landlord.

Indeed, "[n]either the Second Circuit nor district courts in this Circuit have opined on whether a landlord may be held liable under the FHA for failing to intervene in harassment between tenants based on protected class." *Cain,* 2014 WL 2440596, at \*6. In this regard, the Plaintiff's reliance on *Khalil* and *Rich* is misplaced. Both of those cases involved direct discrimination by a landlord or its agents against a tenant.

The case law on this question outside this Circuit is sparse. In support of its argument that a landlord's failure to intervene in tenant-on-tenant harassment is a violation of the FHA, the Plaintiff points to *Neudecker v. Boisclair Corp.,* 351 F.3d 361, 364 (8th Cir.2003). However, that case does not necessarily support the Plaintiff's position. There, some of the harassment allegedly endured by the plaintiff-tenant came at the hands of children of the building managers, who "sent letters to [the] property manager ... containing false counter-accusations as reprisal" for the plaintiff's complaints about harassment, and on one occasion, one of these children "pinned [the Plaintiff] against a wall after [the Plaintiff] had made another complaint." *Neudecker,* 351 F.3d at 363. The property manager also "falsely accused [the Plaintiff]

of 'stalking' another tenant and threatened to evict him, and ... threatened to evict [the Plaintiff] 'as reprisal' for his continued complaints about being harassed." *Id.* Unlike in this case, the Plaintiff ultimately surrendered his apartment as a result of the harassment. *Id.*

**[13]** Thus, contrary to the Plaintiff's contention, *Neudecker* does not stand for the proposition that a tenant may assert an actionable claim for hostile housing environment under the FHA against the landlord based on harassment by a co-tenant where the landlord is simply made aware of the harassment but fails to take corrective action. *See Cain,* 2014 WL 2440596, at \*5 (distinguishing *Neudecker* from the facts of that case in which the Plaintiff did not allege a "familial or other relationship to the landlord or manager of the building" or that the landlord contributed to the harassment).

**\*8** However, to the extent that *Neudecker* could be construed to hold that a landlord's knowing failure to intervene in response to tenant-on-tenant harassment, without more, states a claim under the FHA, it did so without engaging in any substantive analysis of the text of the statute. Further, that reasoning was expressly rejected by the Supreme Court of Ohio in *Ohio Civ. Rights Comm. v. Akron Metro Hous. Auth.,* 2008–Ohio–3320, ¶ 17, 119 Ohio St.3d 77, 81, 892 N.E.2d 415, 419 (2008). Addressing a claim under a state housing statute, that court aptly distinguished the employer-employee relationship from the landlord-tenant relationship.

In *Burlington Industries* and *Faragher* [*v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ], the United States Supreme Court noted that imposing liability on an employer who knew or should have known about coworker harassment was an application of negligence liability. In *Faragher,* the Supreme Court noted in dicta that "combined knowledge and inaction may be seen as demonstrable negligence." *Id.* at 789, 118 S.Ct. at 2275. In *Burlington Industries* [*v. Ellerth*], 524 U.S. [742] at 759, 118 S.Ct. 2257, 141 L.Ed.2d 633 [ (1998) ], the Supreme Court noted, also in dicta, that "[a]n employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it."

2 8B¶ 19} This liability of an employer for an employee's negligence derives from the established principles of agency law. In *Burlington,* the Supreme Court discussed employer liability for the tortious actions of an employee in the context of master-servant liability, noting that a master is not liable for the torts of a servant acting outside the scope of employment unless one of four factors exists. *Id.*

at 758, 118 S.Ct. 2257, citing 1 Restatement of the Law 2d, Agency (1958), Section 219(2). None of those factors apply to the liability of a landlord for the actions of a tenant.

34 8B¶ 20} The agency principles that govern employer-employee liability have no parallel in the context of landlord-tenant disputes: "The relation of landlord and tenant in itself involves no idea of representation or of agency. It is a relation * *420 *82 existing between two independent contracting parties. The landlord is not responsible to third persons for the torts of his tenant."*Midland Oil Co. v. Thigpen (C.A.8, 1925),* 4 F.2d 85, 91. *See also Darnell v. Columbus Show Case Co.* (1907), 129 Ga. 62, 65, 58 S.E. 631 ("a tortious act done by one tenant to another tenant of a common landlord, without the authority, consent, or connivance of the landlord, is not the latter's tort, but the tort of him who does the act").

5 {¶ 5} The amount of control that a landlord exercises over his tenant is not comparable to that which an employer exercises over his employee. As the appellants observe, a landlord does enjoy a measure of control through his ability to evict tenants. In the present case, the lease signed by Kaisk gives the AMHA authority to evict a tenant who disturbs other tenants' "peaceful enjoyment of their accommodations." The power of eviction alone, however, is insufficient to hold a landlord liable for his tenant's tortious actions against another tenant. *See Siino v. Reices (1995),* 216 A.D.2d 552, 553, 628 N.Y.S.2d 757 ("Absent authority to control the conduct of a third person, a landowner does not have a duty to protect a tenant from the conduct of another tenant. A reasonable opportunity or effective means to control a third person does not arise from the mere power to evict."[Citations omitted] ). We therefore reject the argument that our precedent in the employment context applies to the cause of action at issue here.

**\*9** *Id.* at 81–82, 892 N.E.2d 415.

In *Lawrence v. Courtyards at Deerwood Association, Inc.,* 318 F.Supp.2d 1133, 1144 (S.D.Fla.2004), the plaintiffs were an African—American couple who sued their homeowners' association, property manager, and a neighbor, alleging that the homeowner association and the property manager allowed the neighbor to create a racially hostile housing environment in violation of Sections 3604 and 3617 of the FHA and 42 U.S.C. § 1982. *Id.* at 1136–38. The complaint alleged that the association addressed the complaints and problems of white homeowners, but refused to protect the plaintiffs' right

to the quiet enjoyment of their property because they were African—American. *Id.* at 1138. The *Lawrence* court found that the plaintiffs failed to state a claim under Section 3617, reasoning that "[a] failure to act does not rise to the level of the egregious over conduct that has been held sufficient to state a claim under section 3617."*Id.* at 1144–45. Finally, the court held that the "defendants' failure to take action is not a 'direct and intentional act of interference' unless the Defendants had a duty to stop [the harassing] conduct."*Id.* at 1145 (S.D.Fla.2004).

However, "the court in *Lawrence* appeared to leave open the possibility that if there had been evidence that the homeowners' association or property manager failed to act due to discriminatory motives, the plaintiffs would have been able to establish a Section 3617 claim."*Martinez v. California Investors XII,* No. CV 05–7608(JTL), 2007 WL 8435675, at *7 (C.D.Cal. Dec. 12, 2007).

In *Fahnbulleh v. GFZ Realty, LLC,* 795 F.Supp.2d 360, 364 (D.Md.2011), the Plaintiff-tenant was allegedly subjected to sexual harassment by a fellow tenant, and the landlord knowingly failed to intervene. The Plaintiff brought a federal action raising FHA and other claims. The landlord moved to dismiss the FHA claim on the ground that the statute did not authorize hostile-environment sexual-harassment claims for tenant-on-tenant harassment. The court denied the motion, finding that "there is no categorical rule that prevents FHA recovery for hostile-housing-environment sexual harassment based on tenant-on-tenant harassment."*Id.*

However, in so holding, the Court did not engage the text of the FHA, but rather drew upon general Title VII employer-employee principals. The Court primarily relied on a previous district court FHA decision in that Circuit, *Williams v. Poretsky Mgmt., Inc.,* 955 F.Supp. 490, 496 (D.Md.1996), which, in turn relied exclusively on *Katz v. Dole,* 709 F.2d 251, 256 (4th Cir.1983), *partially abrogated by Mikels v. City of Durham,* 183 F.3d 323 (4th Cir.1999), a Title VII employer-employee case.

The *Fahnbulleh* Court did, however, acknowledge that, unlike a landlord-tenant relationship, a "clear agency relationship exists between the employer and the [employee] perpetrator."795 F.Supp.2d at 364. The Court aptly responded to this distinction as follows:

**\*10** [E]mployer liability under Title VII is not limited to harassment perpetrated by employees. Employers can also be liable for the harassing conduct of a third party,

such as a customer, "if the employer ratifies or acquiesces in the customer's demands." *Hylind v. Xerox Corp.,* 380 F.Supp.2d 705, 716 (D.Md.2005). In some circumstances, employers are "required to protect [their] employees from illegal acts of [their] own employees and non-employees alike," and this duty "may require employers to exercise control over individuals not under [their] employ." *Graves v. Cnty. of Dauphin,* 98 F.Supp.2d 613, 620 (M.D.Pa.2000).

795 F.Supp.2d at 364.

That said, the *Fahnbulleh* decision expressly limited itself to a rejection of a categorical rule that prevents FHA recovery for hostile-housing environment sexual harassment based on a tenant-on-tenant harassment. The Court specifically stated that it was not deciding "what factual circumstances justify holding landlords liable for tenant harassment, nor whether such circumstances are present in th[at] case." *Id.*

In that respect, *Fahnbulleh* is, in fact, consistent with *Lawrence* because, as noted above, the latter case "[left] open the possibility that if there had been evidence that the homeowners' association or property manager failed to act due to discriminatory motives, the plaintiffs would have been able to establish a Section 3617 claim." *Martinez,* 2007 WL 8435675, at *7.

Circling back to this Circuit, the Court notes again that the Second Circuit has not yet decided whether post-acquisition harassment is actionable under the FHA and, by extension, whether a landlord or property owner's knowing failure to intervene to combat such harassment, without more, is actionable against the landlord or property owner. Further, no district court in this Circuit has addressed the latter question.

With that in mind, the Court turns to the text of the relevant statutes: Sections 3604(b) and 3617 of the FHA. As noted above, Section 3604(b) makes it "unlawful ... to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race..."

"Violations of section 3604(b) are recognized where such differences include showing a member of a protected class fewer apartments, quoting higher rents, quoting later days of availability, requiring applications and credit checks, or representing apartment features differently (e.g., 'a one bedroom for the white tester; black tester told unit is really small')." *Fair Housing Justice Center, Inc. v. Broadway*

*Crescent Realty, Inc.,* No. 10 Civ. 34(CM), 2011 WL 856095, at *6 (S.D.N.Y. Mar. 9, 2011). They also include making an apartment available to a white tenant and making a non-white tenant wait for an apartment to become available at a later date, *Williamsburg Fair Housing Committee v. New York City Housing Authority,* 493 F.Supp. 1225, 1248 (S.D.N.Y.1980) ("When the staff filled a vacancy in a White-designated apartment by going down the list to find the next White family, they would be denying the apartment to the non-White families passed over. Such a non-White family would, at least for a time, have been denied an apartment for which it was eligible. Stated differently, that family would have been discriminated against in the privileges of a rental."), and falsely stating to a black customer that no homes are for sale, *see Village of Bellwood v. Dwivedi,* 895 F.2d 1521 (7th Cir.1990) (stating that this conduct constitutes discrimination on racial grounds against the person in the provision of real estate services).

**\*11** In addition, as noted above, Section 3617 makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other persons in the exercise of enjoyment of any right granted by section [3603, 3604, 3605, and 3606 of this title.]" Typically, "[i]n order to prevail on [a] § 3617 claim, [a] Plaintiff must show that: (1) she is a member of a protected class under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) Defendants were motivated in part by an intent to discriminate, and (4) Defendants coerced, threatened, intimidated or interfered with Plaintiff on account of her protected activity under the FHA." *Lachira v. Sutton,* No. 305CV1585 (PCD), 2007 WL 1346913, at *18 (D.Conn. May 7, 2007). The *Lachira* Court assumed, following Seventh Circuit precedent, that "a showing of intentional discrimination is an essential element of a § 3617 claim." *Id.* at n. 18.

**[14]** Fairly read, the text of both Section 3604(b) and Section 3617 of the FHA, and the above-mentioned cases interpreting those statutes, require intentional discrimination on the part of a Defendant in order to state a claim under those provisions. The Court identifies no compelling reason why that requisite showing is also not necessary for a "hostile housing environment" claim, assuming, without deciding, such a claim is actionable against a landlord or property owner under the FHA. Such a holding is consistent with the

*Neudecker, Lawrence,* and *Fahnbulleh* cases decided outside this Circuit.

The Court recognizes that all the Circuits, including the Second Circuit, have recognized a claim of disparate impact under Section 3604(a) of the FHA, which does not require proof of intentional discrimination, *MHANY Mgmt. Inc. v. Inc. Vill. of Garden City,* 985 F.Supp.2d 390, 424 (E.D.N.Y.2013) (following bench trial, finding Village and Board of Trustees liable under FHA under both theories of disparate treatment and disparate impact); *Tsombanidis v. W. Haven Fire Dep't,* 352 F.3d 565, 574 (2d Cir.2003) (applying disparate impact theory under the FHA), though the viability of such a claim is set to be resolved by the Supreme Court this term in *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.,* ––– U.S. ––––, 135 S.Ct. 46, 189 L.Ed.2d 896 (2014) (granting writ of certiorari). In any event, here, the Plaintiff does not bring a disparate impact claim under Section 3604(a) against the KPM Defendants, nor, on these facts, could he plausibly do so.

In sum, the Court concludes that, assuming, without deciding, that a "hostile housing environment" claim is actionable against a landlord or property owner under the FHA, a question unresolved at this time by the Second Circuit, such a claim would require allegations of intentional discriminatory conduct, or failure to intervene, by the landlord or property owner based on a protected category. Turning to whether the Plaintiff has adequately done so in this case, the Court concludes that he has not.

**\*12** To survive a motion to dismiss under Rule 12(b)(6), "the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint."*Nelson v. Brown,* No. 13–CV–3446 (KAM)(MDG), 2014 WL 4470798, at \*3 (E.D.N.Y. Sept. 10, 2014) (citation and quotation marks omitted). Again, "naked assertions by plaintiffs that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race are too conclusory."*Poles v. Brooklyn Cmty. Hous. & Servs.,* No. 11 CIV. 4796(BMC), 2012 WL 668910, at \*3 (E.D.N.Y. Feb. 29, 2012).

The Court finds that, on the facts in this case, that the Plaintiff alleges no basis for imputing the allegedly harassment conduct to the KPM Defendants as opposed to Endres, or that the KPM Defendants failed to intervene on account of

their own racial animus toward the Plaintiff. Accordingly, the Court grants that part of the motion by the KPM Defendants dismissing the Plaintiff's FHA claims against them.

**D. *The New York Executive Law Claims***

The New York Executive Law, with exceptions not pertinent here, contains provisions prohibiting housing discrimination similar to those in the FHA:

> It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof:

> (2) To discriminate against any person because of race ... in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith.

N.Y. Exec. Law § 296(5)(a)(2).

**[15]** **[16]** Claims under the FHA and New York Executive Law § 296 are "evaluated under the same framework." *Olsen v. Stark Homes, Inc.,* 759 F.3d 140, 153 (2d Cir.2014) (citation and quotation marks omitted); *see Barkley v. Olympia Mortgage Co.,* No. 04–CV–875 (RJD)(KAM), 2007 WL 2437810, at \*18, 2007 U.S. Dist. LEXIS 61940, at \*56–57 (E.D.N.Y. Aug. 22, 2007) ("the standard relevant to [the NYHRL] claims parallel those applicable under the Fair Housing Act"). Thus, the Plaintiff's claim under New York Executive law § 296(5)(a)(2) against the KPM Defendants fails as a matter of law for the same reason the FHA claims do, and those claims are dismissed.

The Plaintiff also invokes New York Executive law § 296(6), which states: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."The term "person" includes "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers."N.Y. Exec. Law § 292(1).

**\*13** As a preliminary matter, the Court notes that it has not uncovered a successful claim under Section 296(6) against an employer or landlord, rather than an individual participating in the alleged discrimination of that employer or landlord. However, by its plain terms, claims under Section 296(6) can

be brought against corporate entities such as KPM. The most likely scenario of when such a claim is successful is when the corporate entity is alleged to have "aided and abetted" another entity, not its employee or tenant.

Turning to the substantive law, "[c]laims of discrimination under § 296(6) of the NYHRL are analyzed under the same framework as is used for the FHA."*Rivera v. Inc. Vill. of Farmingdale,* No. 06–CV–2613 (DRH)(ARL), 2011 WL 1260195, at *4 (E.D.N.Y. Mar. 30, 2011).

Under § 296(6), an individual or entity must "actually participate[ ] in the conduct giving rise to a discrimination claim" to be held liable.*DiPilato v. 7–Eleven, Inc.,* 662 F.Supp.2d 333, 353 (S.D.N.Y.2009). Here, for the reasons explained in conjunction with the Plaintiff's FHA claims against the KPM Defendants, the Plaintiff's claim under Section 296(6) fails as a matter of law. Again, there is no plausible allegation that the KPM Defendants actually participated in Endres' alleged discriminatory conduct. Accordingly, the Court grants that part of the motion by the KPM Defendants dismissing the Plaintiff's Section 296(6) claim against them.

### E. *Negligent Infliction of Emotional Distress*

[17]    Under New York law, the tort of negligent infliction of emotional distress has four elements: "(1) breach of a duty owed to the plaintiff, which breach either unreasonably endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her physical safety; (2) extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."*Walia v. Holder,* No. 12–CV–5944 (ADS)(SIL), –––– F.Supp.3d ––––, 2014 WL 5820293, at *18 (E.D.N.Y. Nov. 10, 2014).

In this case, even drawing all inferences in favor of the Plaintiff, the Court finds that he has failed to adequately plead the existing common law duty of care owed by the KPM, his landlord, or Downing, its alleged agent, toward him, the tenant.

[18]    [19]    In New York, "[a] landlord has no [common law] duty to prevent one tenant from attacking another tenant unless it has the authority, ability, and opportunity to control the actions of the assailant."*Britt v. New York City Hous. Auth.,* 3 A.D.3d 514, 514, 770 N.Y.S.2d 744, 745 (2d Dep't 2004). KPM's power to evict Endres did not furnish it "with a reasonable opportunity or effective means to prevent or

remedy [Endres's alleged] unacceptable conduct, since the incident[s] giving rise to the injuries sustained, and indeed, the pattern of harassment alleged by the plaintiff, arose from a purely personal dispute between the two individuals [citations omitted]."*Id.*(citation and quotation marks omitted).

*14    Contrary to the Plaintiff's contention, the mere fact that the KPM Defendants were allegedly made aware of the underlying verbal abuse and threats of physical assault did not trigger a common law duty on their part to investigate and intervene.

Accordingly, the Court grants that part of the motion by the KPM Defendants dismissing the Plaintiff's claims of negligent infliction of emotional distress against them.

### F. *Breach of Contract*

[20]    "Under New York law, the elements of a cause of action for breach of contract are (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach."*In re Sona Mobile Holdings Corp.,* No. 13CV04702 (LTS)(DCF), 2014 WL 5781101, at *5 (S.D.N.Y. Nov. 6, 2014) (quoting *Beautiful Jewellers Private Ltd. v. Tiffany & Co.,* 438 Fed.Appx. 20, 21–22 (2d Cir.2011)).

Here, the parties dispute whether the Plaintiff has adequately plead a breach of any terms of the lease or other contract. First, the Plaintiff alleges that KPM breached Part B of a Housing Assistance Payments ("HAP") Contract, which is attached to the complaint, entered into between the Plaintiff and KPM. Section 9(a) of Part B provides, in pertinent part: "In accordance with applicable equal opportunity statutes, Executive Orders, and regulations: The owner must not discriminate against any person because of race ... in connection with the HAP contract."(Compl., Exh. 6, at 7.)

The Court has not uncovered, nor does the Plaintiff cite, any case where a claim for breach of a HAP contractual discrimination provision was sustained against a landlord or property owner for failure to intervene, whether based on racial animus or not, in response to harassing behavior from a co-tenant. In fact, the Plaintiff cites no cases of a successful HAP breach of contract claim in general.

In any event, the Court finds that the Plaintiff's claim for breach of Section 9(a) of the HAP contract fails as a matter of law because, as explained above, there is no plausible

allegation that the KPM Defendants acted, or failed to act, on account of the Plaintiff's race.

In the complaint, the Plaintiff also invokes Paragraph 12 of the April 21, 2010 Lease which, provides that "[b]y paying the rent and observing all the terms and conditions herein, Tenant shall peaceably and quietly have, hold and enjoy the Premises during the term of this Lease."(Compl., at Exh 4.) The Plaintiff now frames the claim as one of breach of the "warranty of habitability" under Paragraph 8 of the April 21, 2010 Rental Agreement and statutorily implied in New York leases. Therefore, the Court deems the Plaintiff to have abandoned his claims based on Paragraph 12 of the April 21, 2010 lease, and dismisses those claims.

Although the complaint makes no specific reference to a "warranty of habitability," implied or otherwise, the Court construes the complaint liberally, as it must on this motion to dismiss, to assert such a claim and determines that notice of this claim is sufficient. (*See* Compl. ¶ 70)("Because of [the] Defendants' actions, Mr. Francis was unable to fully use and enjoy the Premises despite having met his rent obligations each month."). Further, the KPM Defendants had an opportunity to respond to this claim in their reply papers. For these reasons, the Plaintiff did not need to move for leave to file an amended complaint to assert this claim.

**\*15** **[21]** Turning to the merits of this claim, the Court notes that "[p]ursuant to Real Property Law § 235–b, every residential lease contains an implied warranty of habitability which is limited by its terms to three covenants: (1) that the premises are "fit for human habitation," (2) that the premises are fit for "the uses reasonably intended by the parties," and (3) that the occupants will not be subjected to conditions that are dangerous, hazardous or detrimental to their life, health or safety."*Solow v. Wellner,* 86 N.Y.2d 582, 587, 635 N.Y.S.2d 132, 658 N.E.2d 1005 (1995).

The New York Court of Appeals has interpreted this statute broadly, extending a landlord's liability to acts of third parties. *Park West Mgt. Corp. v. Mitchell,* 47 N.Y.2d 316, 327, 418 N.Y.S.2d 310, 391 N.E.2d 1288 (1979). The lower courts in New York have followed suit. *See Elkman v. Southgate Owners Corp.,* 233 A.D.2d 104, 649 N.Y.S.2d 138 (1st Dep't 1996) (an alleged noxious odor emanating from a retail fish store in an adjacent building neither owned nor controlled by the landlord cooperative corporation may be a breach of the implied warranty of habitability); *Sargent Realty Corp. v. Vizzini,* 101 Misc.2d 763, 421 N.Y.S.2d 963

(Civ.Ct.N.Y.County 1979) (floods caused by the upstairs tenant on four occasions which the landlord allowed to persist resulted in substantial abatement).

"Although a landlord may lack direct control over the actions of another tenant, courts have often applied the implied warranty of habitability to conditions beyond the landlord's direct control."*Upper E. Lease Associates, LLC v. Cannon,* 30 Misc.3d 1213(A), 924 N.Y.S.2d 312, 2011 WL 182091 (Dist.Ct.2011)*aff'd,*37 Misc.3d 136(A), 961 N.Y.S.2d 362 (App.Term 2012).

Furthermore, in *Poyck v. Bryant,* 13 Misc.3d 699, 705, 820 N.Y.S.2d 774, 780 (Civ.Ct., New York County 2006), the court held that a tenant's smoking habits may give rise to a duty to act, to prevent "unreasonable interference" with the rights of other tenants.

Also, in *Auburn Leasing Corp. v. Burgos,* 160 Misc.3d 374, 609 N.Y.S.2d 549 (Civ.Ct., Queens County 1994), following a bench trial, the court held that a landlord breached the statutorily implied warranty of habitability by failing to evict cotenant drug dealers who bullied, harassed, and threatened the tenant and her family. In that case, the Court noted that "[t]he defendant-tenant acted reasonably and prudently in vacating the apartment before the expiration of the lease since it became evident that it was not safe for her or her family to live in the apartment any longer."*Id.* at 377, 609 N.Y.S.2d 549. However, the Court's determination that the landlord breached the warranty of habitability did not turn on whether the tenant vacated the premises or was constructively evicted.

The Court also considers *Regensburg v. Rzonca,* 14 Misc.3d 1221(A), 836 N.Y.S.2d 489 (Dist.Ct.2007), an eviction proceeding. Following a bench trial, the Court found a breach of the warranty of habitability for failure to intervene in response to the harassing behavior of a neighbor. The Court stated: "The notion of leaving emotionally vulnerable tenants to their own resort, instructing them to (call the police) after being informed of [the fellow tenant]'s harassing behavior, is inconsistent with a boarding house environment." *Id.*

**\*16** Although this case does not involve a boarding house environment, the Court also held, relying on *Auburn Leasing Corp.,* that "[e]ven without a bargained for duty, case law requires a landlord to protect tenants from being bullied and harassed by other drug dealing tenants."*Id.* To be sure, there were additional findings against the landlord in that

case, including the landlord's pattern of withholding promised "essential services" such as water and electricity. *Id.*

While the foregoing cases have recognized a cause of action for breach of the statutorily implied warranty of habitability, the Appellate Term, First Department has held that the statutorily implied warranty of habitability "should not be stretched beyond its breaking point to provide a means for recovering damages allegedly caused by the personal animus between a residential tenant" and in that case, a roommate. *Cameron v. Aurora Associates, L.P.,* 26 Misc.3d 80, 82, 896 N.Y.S.2d 562 (App.Term 2009)

Similarly, in *Freda v. Phillips,* 36 Misc.3d 1231(A), 959 N.Y.S.2d 89, 2012 WL 3569954 (Just.Ct., Town of Dutchess County, 2012), following a bench trial, the Court dismissed a petition based on a breach of the statutorily implied warranty of habitability. The Court stated as follows:

> The Court invited both sides to provide it with any statutory or case law authority that would support the proposition that the landlord, under the implied warranty of habitability, had to supervise the behavior of co-tenants.

> Despite the industry of plaintiff's counsel, she was unable to provide any such clear authority. It is the finding of the Court that the landlady/defendant is under no obligation to be the den mother of her tenants and assure that they get along.

*Id.* at *2.

This Court respectfully disagrees with this aspect of *Freda.* As noted above, there is New York case law, including *Poyck, Auburn Leasing Corp.,* and *Regensburg,* holding that the warranty of habitability includes responding to the behavior of co-tenants.

Further, in *Park West Mgt. Corp.,* the New York Court of Appeals extended this warranty to third parties. If landlords can be liable, in certain circumstances, for tortious and other misconduct by third-parties committed on the premises by individuals or entities not within their direct control, they should logically be held liable, in certain circumstances, for tortious and other misconduct of co-tenants, over whom they enjoy some degree of control.

Having concluded that a tenant may state a claim for breach of the statutorily implied warranty of habitability against a landlord for failure to intervene in response to harassing

behavior by a co-tenant, the Court turns to the merits of the claim in this case.

**[22]** The statutory warranty of habitability set forth in New York Real Property Law § 235–b protects against conditions that materially affect the health and safety of tenants or deficiencies that "in the eyes of a reasonable person ... deprive the tenant of those essential functions which a residence is expected to provide." *Solow,* 86 N.Y.2d 582, 588, 635 N.Y.S.2d 132, 658 N.E.2d 1005 (citations and quotations omitted).

**\*17** **[23]** Here, at this stage of the litigation, the Court concludes that the Plaintiff has adequately plead a breach of the implied warranty of habitability against KPM. That the Plaintiff elected to renew his lease during the period of complained-of harassment does not, as a matter of law, bar this claim, and the KPM Defendants do not cite any authority to the contrary. Accordingly, the Court denies that part of the motion by the KPM Defendants to dismiss the Plaintiff's claim for breach of the statutorily implied warranty of habitability against KPM.

As to Downing, the Court declines to consider her declaration submitted in support of the motion to dismiss in which Downing denies that she is an officer or manager of KPM or that she has an ownership interest in the corporation. Such material is extraneous to the Court's consideration of a motion to dismiss.

However, although Downing is a signatory to the underlying lease, she signed it as an agent for KPM, not in her personal capacity. Therefore, the claim for breach of the statutorily implied warranty of habitability against Downing is dismissed. *Compare Yarn Trading Corp. v. United Pads & Trim Inc.,* 118 A.D.3d 600, 601, 988 N.Y.S.2d 622, 623 (1st Dep't 2014) ("The deposition testimony, affidavits, and lease agreement also raise triable issues as to whether the individual defendant negotiated, as well as signed, the lease agreement in his personal capacity or only as an agent on behalf of the corporate defendant").

## III. CONCLUSION

Based on the foregoing reasons, the motion to dismiss filed by the KPM Defendants is granted in part and denied in part. The motion is denied as to the Plaintiff's claims for breach of the statutorily implied warranty of habitability against KPM.

The motion is otherwise granted. The Clerk of the Court is directed to terminate Downing as a Defendant.

As noted above, on July 16, 2014, the Clerk of the Court noted the default of Endres. There having been no activity on the docket as to Endres since that date, the Court permits the Plaintiff to file a motion for a default judgment against Endres on or before May 1, 2015. Should the Plaintiff fail to do so or

to move for an extension, the Court will dismiss this action as against Endres for failure to prosecute under Rule 41(b).

**SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2015 WL 1189579

---

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 1981568
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Claude GALLAND, Plaintiff,
v.
Eric MARGULES et al., Defendants.

No. 05CIV5639DC. | Aug. 17, 2005.

### MEMORANDUM DECISION

CHIN, J.

**\*1** Plaintiff, appearing *pro se,* brings the instant complaint, "challenging the constitutionality of Summary proceedings that allow[ ], permit and encourage the law to be used as an extortion tool[,]" and seeking as relief, *inter alia,* "no less than five million[ ]" dollars in damages and a review of "the law to fill the 'loopholes'[.]" [1] (Compl. at 4 (unmarked)). Liberally construing plaintiff's complaint, *see* Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (*pro se* complaints must be "read liberally and should be interpreted 'to raise the strongest arguments that they suggest' ") (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)), it appears that plaintiff is a party in an ongoing action involving a residential landlord-tenant dispute brought in the Housing Part of the Civil Court of the City of New York ("Housing Court"). (Compl. at 10-21). For the following reasons, the instant action is dismissed.

### DISCUSSION

**A.** *Subject Matter Jurisdiction*
The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, federal subject matter jurisdiction is available only when a "federal question" is presented or when plaintiff and defendants are of diverse citizenship and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. §§ 1331, 1332. A party seeking relief in the district court must plead facts that bring the suit within the court's subject matter jurisdiction. *See* Fed.R.Civ.P. 8(a)(1). Failure to plead such facts warrants dismissal of the action. Fed.R.Civ.P. 12(h)(3);

*see also* Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative...."); *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (courts have an "independent obligation to examine" the basis of their jurisdiction); *Manway Constr. Co., Inc. v. Hous. Auth. Of the City of Hartford,* 711 F.2d 501, 503 (2d Cir.1983) (citing Fed.R.Civ.P. 12(h) when holding that courts may dismiss cases *suasponte* for lack of subject matter jurisdiction).

**1.** *Federal Question*
To invoke federal question subject matter jurisdiction, plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see* State of New York v. White, 528 F.2d 336, 338 (2d Cir.1975) ("Federal jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law."). Despite granting *pro se* plaintiff's complaint the liberal interpretation it is due, plaintiff's action fails to invoke this Court's federal question subject matter jurisdiction. As stated above, the instant action appears to arise out of a residential landlord-tenant action pending in Housing Court. Plaintiff's case must be dismissed as federal courts do not have federal question subject matter jurisdiction over state residential landlord-tenant matters. *United Mut. Houses, L.P. v. Andujar,* 230 F.Supp.2d 349, 354 (S.D.N.Y.2002); *Chiania v. Broadmoor Assocs.,* No. 94 Civ. 0613(RPP), 1994 WL 30412 (S.D.N.Y. Feb.2, 1994); *Kya-Hill v. New York State Unified Ct. Sys.,* No. 94 Civ. 0176(RPP), 1994 WL 17925 (S.D.N.Y. Jan.18, 1994); *Macebuh v. Parker,* No. 93 Civ. 8761(CSH), 1994 WL 4258 (S.D.N.Y. Jan.7, 1994); *Glen 6 Assocs., Inc. v. Dedaj,* 770 F.Supp. 225, 228 (S.D.N.Y.1991).

**\*2** Plaintiff does refer to violations of his constitutional rights within his complaint. (Compl. at 1-3, 21). Nevertheless, this Court does not have federal question subject matter jurisdiction over plaintiff's housing law claims, even when such claims are dressed in the garb of constitutional claims. *See* Vill. of Millbrook v. Forrest, 903 F.Supp. 599, 600 (S.D.N.Y.1995) ( "Where, as here, the [plaintiff's] constitutional claim appears to be nothing more than a state court claim 'recloaked in constitutional garb,' the constitutional claim is insufficient to confer jurisdiction.") (quoting *Anderson v. Bowen,* 881 F.2d 1, 5 (2d Cir.1989)). Therefore, to the extent plaintiff's action arises out of a residential landlord-tenant dispute, this action is dismissed

because it fails to invoke this Court's federal question subject matter jurisdiction.

Nonetheless, even if this Court were to liberally construe plaintiff's action as one brought under 42 U.S.C. § 1983, wherein plaintiff alleges that his constitutional rights have been violated by defendants, the instant action still would be subject to dismissal. Section 1983 provides a plaintiff a vehicle for the redress of violations of his constitutional rights when such violations are carried out by persons acting under color of state law. See 42 U.S.C. § 1983; Blessing v. Freestone, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." Trancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir.2003), cert. denied, 539 U.S. 942, 123 S.Ct. 2610, 156 L.Ed.2d 628 (2003); see Rendell-Baker v. Kohn, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (" 'In cases under § 1983, "under color" of law has consistently been treated as the same thing as the "state action" required under the Fourteenth Amendment.' ") (quoting United States v. Price, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)); United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292, 1295 (2d Cir.1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action'."). Therefore,

> to satisfy the state action requirement where the defendant is a private entity, the allegedly unconstitutional conduct must be fairly attributable to the state. Conduct that is ostensibly private can be fairly attributed to the state only if there is such a close nexus between the [s]tate and the challenged action that seemingly private behavior may be fairly treated as that of the [s]tate itself.

Trancredi, 316 F.3d at 312 (citations and internal quotation marks omitted). Plaintiff has failed to allege facts demonstrating how defendants-apparently private parties-were "state actors" for the purpose of § 1983 when they allegedly violated plaintiff's federally protected rights. Therefore, to the extent plaintiff raises § 1983 claims against defendants, such claims are dismissed.

*3 Additionally, to the extent plaintiff raises § 1983 claims in an attempt to have this Court review and/or intervene in a pending matter in a New York court, such claims are also dismissed. In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that a "federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment or irreparable injury that is both serious and immediate." Gibson v. Berryhill, 411 U.S. 564, 573-74, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (citing Younger, 401 U.S. at 54). "Younger abstention also has been extended beyond the ambit of state criminal prosecutions to state civil proceedings and administrative proceedings." Washington v. County of Rockland, 373 F.3d 310, 318 (2d Cir.2004); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir.2002) ("Younger generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings."). "Younger abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 75 (2d Cir.2003), cert. denied, 541 U.S. 1085, 124 S.Ct. 2812, 159 L.Ed.2d 247 (2004). To the extent there is an ongoing residential landlord-tenant action pending in Housing Court, where both plaintiff and defendants are parties, and notwithstanding whether an important state interest is implicated, plaintiff has failed to allege facts demonstrating that any of the proceedings held during the pendency of such an action have been an inadequate "opportunity for judicial review of his ... federal constitutional claims." Spargo, 351 F.3d at 75. Therefore, to the extent that plaintiff raises § 1983 claims in an attempt to have this Court review and/or intervene in an ongoing residential landlord-tenant action pending in Housing Court, where both plaintiff and defendants are parties, such claims are dismissed.

### 2. Diversity Jurisdiction

With respect to this Court's diversity jurisdiction, "[a] case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State." Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 388, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998). In addition, "the party asserting diversity jurisdiction in federal court has the burden of establishing the existence of the jurisdictional amount in controversy." Lupo v. Human

*Affairs Int'l, Inc.,* 28 F.3d 269, 273 (2d Cir.1994) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). Plaintiff has indicated that he and defendants all reside in New York. (Compl. at 1). Therefore, to the extent plaintiff's action is based on this Court's diversity subject matter jurisdiction, it must be dismissed as well.

### CONCLUSION

**\*4** Accordingly, the instant action is dismissed with prejudice as to the purported federal claims and without prejudice to the state court proceedings. *See* Fed.R.Civ.P. 12(h)(3). Although this Court would generally permit amendment of a fee-paid complaint to cure any defects before dismissing the case *suasponte, see* *Hughes v. City of Albany,* 76 F.3d 53, 56 (2d Cir.1996), there is no need to do so here because plaintiff presents no arguably meritorious issue. *Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 364 (2d Cir.2000) (per curiam) ("[W]e hold that district courts may dismiss a frivolous complaint *suasponte* even when the plaintiff has paid the required filing fee[.]"); *Pourzancvakil v. Humphry,* No. Civ. A. 94-CV-1594, 1995 WL 316935, at \*8 (N.D.N.Y. May 23, 1995) ("The law in this circuit is that a district court may *suasponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee.") (citing *Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y.1993), *aff'd,* 41 F.3d 1500 (2d Cir.1994)); *cf. Pillay v. INS,* 45 F.3d 14, 17 (2d Cir.1995) (per curiam) (discussing appellate court's inherent authority to dismiss non-meritorious and/or frivolous fee-paid cases).

The Clerk of the Court is directed to enter judgment accordingly and shall close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 1981568

Footnotes

1    This Court's *ProSe* Office received the instant complaint on June 16, 2005. I note that plaintiff has paid the requisite filing fee.

**Westlaw**Next © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 2550733
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Sol ROSEN and Florence Rosen, Plaintiffs,

v.

NORTH SHORE TOWERS
APARTMENTS, INC., Defendant.

No. 11–CV–00752 (RRM)(LB).   |   June 27, 2011.

**Attorneys and Law Firms**

Sol Rosen, Manhasset, NY, pro se.

Florence Rosen, Floral Parkway, NY, pro se.

Richard M. Resnik, Eddy Salcedo, Jerry Montag, Seyfarth Shaw LLP, New York, NY, Errol A. Brett, Law Office Errol Brett, Floral Park, NY, for Defendant.

### *MEMORANDUM AND ORDER*

ROSLYNN R. MAUSKOPF, District Judge.

**\*1** Plaintiffs, husband and wife, both appearing *pro se,* [1] bring this action to recover possession of a cooperative apartment appurtenant to shares of defendant North Shore Towers Apartments, Inc., from which they were evicted pursuant to an order of Queens County Housing Court Judge Anne Katz. (Am.Compl. (Doc. No. 6) at ¶¶ 3, 5; Decl. of Jerry A. Montag in Supp. of Mot. to Dismiss ("Montag Decl."), Ex. E (Doc. No. 43–2) at 2 (Decision and Order of Housing Court Judge Katz).) Presently before the Court is defendant's motion to dismiss for lack of subject matter jurisdiction under 12(b)(1) of the Federal Rules of Civil Procedure. (Mot. to Dismiss (Doc. No. 43) at 1–2.) For the reasons set forth below, defendant's motion is GRANTED.

### BACKGROUND

On February 15, 2011, plaintiffs filed this action together with an affidavit in support of an Order to Show Cause for temporary and preliminary injunctive relief, seeking an order compelling defendant to restore plaintiffs to possession of the apartment. (Compl.(Doc. No. 1) at ¶¶ 4–5; Aff. in Supp (Doc.

1–2) at 1–2). The following day, plaintiffs filed an amended complaint, expanding on the circumstances of their eviction. (Am. Compl. at ¶¶ 3–5.)

On February 17, 2011, the Court held a lengthy hearing on plaintiffs' request for injunctive relief. (*See* Minute Entry dated Feb. 17, 2011 (Doc. No. 5).) Present at the hearing were both plaintiffs, and then-counsel for defendant, Errol Brett, an attorney with North Shore Towers who represented defendant in prior state court proceedings against plaintiffs. The parties, at times contentiously, revealed a protracted history relating to plaintiffs' non-payment of maintenance and other charges, which culminated in plaintiffs' eviction and the forced sale of plaintiffs' apartment pursuant to order of both the Queens County Housing Court and the Queens County Supreme Court. In addition, plaintiff Sol Rosen presented a rambling, unfocused allegation that defendant's directors, officers and accountants had defrauded defendant and its shareholders of $44,000,000 through the levying of fraudulent capital assessments, and the fraudulent valuation of revenue, expenses and surplus. (*See, e.g.,* Minute Entry dated Feb. 17, 2011, Pls.' Ex. 4 (Doc 5–10), at 1–3 [2].) These allegations, not included in the original or amended complaints, comprise much of plaintiff Sol Rosen's opposition to the instant Motion to Dismiss, and which are, themselves, confused discursions, comprised of printouts, photocopies, diagrams, documents from other litigation, and other miscellany, many accompanied by scrawled handwritten notes and annotations. (*See, e.g.,* Notice to the Court (Doc. No. 10) at 4–6, 16–20, 27–28; Letter dated Mar. 25, 2011 from Sol Rosen (Doc. No. 21) at 8–14).

The Court denied plaintiffs' request for injunctive relief, finding that questions surrounding this Court's subject matter jurisdiction rendered success on the merits unlikely. (*See* Minute Entry dated Feb. 17, 2011; Mem. and Order dated March 7, 2011 (Doc. No. 16) (denying, *inter alia,* Plaintiffs' Mot. for Recons.).)

**\*2** Plaintiffs' eviction followed a July 2010 non-payment proceeding in Queens County Housing Court, in which Judge Ann Katz granted Defendant's motion for summary judgment, awarding defendant possession and an order of eviction, as well as a money judgment for back rent. (Montag Decl., Ex. E at 2.)

Shortly after Judge Katz issued that decision, on July 30, 2010, plaintiffs commenced an action in New York Supreme Court for Queens County, seeking an order temporarily and

preliminarily enjoining the eviction, as well as damages for the same fraud and accounting claims raised at the preliminary injunction hearing in this Court. *Rosen v. N. Shore Towers Apartments, Inc.,* No. 19301–2010, slip op. 2 (Sup.Ct. Queens Cnty. Sept. 15, 2010). That court granted the temporary injunction restraining execution of the warrant of eviction pending the disposition of plaintiffs' allegations of fraud. *Id.* In January 2011, Supreme Court Judge Alan Weiss dismissed the complaint, finding that plaintiffs had failed to state a claim for fraud, and vacated the temporary injunctive relief. *Id.* at 4–6.On February 14, 2011, City Marshal George Essock executed the warrant of eviction. (*See* Montag Decl., Ex. I (Doc. No. 43–11) (warrant of eviction).)

Pursuant to an amended briefing schedule established by this Court's Order dated May 13, 2011 (Doc. No. 37), defendant submitted the instant motion to dismiss on May 27, 2011. On May 31, 2011, plaintiff Sol Rosen submitted several untimely responses to defendant's motion. (Pl.'s Opp'n to Defs.' Mot. to Dismiss (Doc. No. 45) ("Pl.'s Opp'n I"); Pl.'s Opp'n to Defs.' Mot. to Dismiss (Doc. No. 47) ("Pl.'s Opp'n II"); Pl.'s Opp'n to Defs.' Mot. to Dismiss (Doc. No. 48) ("Pl.'s Opp'n III"); Pl.'s Reply to Defs.' Mot. to Dismiss (Doc. No. 50) ("Pl.'s Reply").) In light of plaintiff's *pro se* status, the Court accepts plaintiff Sol Rosen's untimely opposition papers, and has considered them in deciding the instant motion as though they were timely. Plaintiff Florence Rosen does not oppose defendant's motion to dismiss. (Decl. of Florence Rosen (Doc. No. 42) at 1). For the reasons below, defendant's motion is GRANTED and plaintiffs' amended complaint is dismissed in its entirety.

### STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000) (citing Fed.R.Civ.P. 12(b)(1)); *see also Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 193 (2d Cir.2003) ("Failure of subject matter jurisdiction, of course, is not waivable and may be raised at any time by a party or by the court *sua sponte.* ") In considering a motion to dismiss for lack of subject matter jurisdiction, a district court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 110 (2d Cir.2004) (citation omitted). This Court, however,

"may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits."*Id.* (citations omitted)."The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."*Aurecchione v. Schoolman Transp. Sys. Inc.,* 426 F.3d 635, 638 (2d Cir.2005).

**\*3** Furthermore, when considering a motion to dismiss a *pro se* complaint, the Court must interpret the complaint liberally to raise the strongest claims that the allegations suggest. *See Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000); *see also Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (noting that courts should hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)). However, mere "conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994) (quoting 2A Moore & Lucas, Moore's Federal Practice ¶ 12.08, at 2266–69 (2d ed.1984)).

### DISCUSSION

The rambling, largely incoherent amended complaint, read together with plaintiffs' equally confusing subsequent submissions, seeks, in essence, an order vacating both the Housing Court's judgment of eviction and the Supreme Court's dismissal of plaintiffs' complaint on the grounds that the state court decisions were wrongly decided. (*See, e.g.,* Am. Compl at ¶¶ 3–5; Notice to the Court (Doc. No. 10) at 1–3.) Although not stated in the pleadings, plaintiffs also attempt to raise the haphazard claims of fraud and accounting malpractice mentioned above, through submissions fraught with recycled state court documents, scribbled rants, Internet postings, jumbled calculations, and demands that the Court appoint lawyers and accountants to investigate and recover $44,000,000 which is alleged to have been taken from the coffers of North Shore Towers. ((*See, e.g.,* Notice to the Court at 4–6, 16–20, 27–28; Letter dated March 25, 2011 from Sol Rosen (Doc. No. 21) at 8–14; Letter dated March 29, 2011 from Sol Rosen (Doc. No. 24) at 2; Letter dated April 5, 2011 from Sol Rosen (Doc. No. 23) at 3–10; *see generally* Pl.'s Opp'n I–III; Pl.'s Reply; Letters from Sol Rosen dated April 13, 2011 (Doc. No. 25), April 16, 2011 (Doc. No. 26), April 26, 2011 (Doc. No. 32), April 29, 2011 (Doc. No. 33), April 30, 2011 (Doc. No. 34), May 5, 2011 (Doc. No. 36), May 16, 2011 (Doc. No. 41)). Defendants move to dismiss for

lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.

### I. *Rooker–Feldman*

The *Rooker–Feldman* doctrine provides that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 84 (2d Cir.2005); *see Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *see also Gyadu v. Unemployment Compensation,* 173 F.3d 844 (unpublished table decision), No. 98–7594, 1999 WL 132179, at *1 (2d Cir. Mar.9, 1999) (" '[L]ower federal courts possess no power whatever to sit in direct review of state court decisions.' " (quoting *Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970))). The *Rooker–Feldman* doctrine operates to bar subject matter jurisdiction in " 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " *McKithen v. Brown,* 481 F.3d 89, 96 (2d Cir.2007) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).

*4 The Second Circuit has set forth four requirements necessary for *Rooker–Feldman* to apply to bar an action: 1) the federal-court plaintiff must have lost in state court; 2) the plaintiff must be complaining of injuries caused by a state-court judgment; 3) the plaintiff must be inviting district court review and rejection of that judgment; and 4) the state-court judgment must have been rendered before the district court proceedings commenced. *Hoblock,* 422 F.3d at 85.

Here, the gravamen of plaintiffs' claims is that the Housing Court judgment of eviction, and subsequent Supreme Court order, were wrongly decided, and that the plaintiffs should, therefore, be returned to possession. All four *Hoblock* requirements are met here. First, plaintiffs lost in state court when the Housing Court judgment awarded possession to defendants, and the Supreme Court dismissed plaintiffs' complaint. *See Rosen,* No. 19301–2010, slip op. 2–3, 5–6 (Sup.Ct. Queens Cnty. Sept. 15, 2010); Montag Decl., Ex. E, at 2). Second, plaintiffs' principal injury—dispossession from their home—was caused by the Housing Court judgment because, but for the judgment, plaintiffs would remain in possession of their home. Third, plaintiffs seek "review

and rejection" of the judgment because a judgment in plaintiffs' favor necessarily would require the district court to "determine that a state-court judgment was erroneously entered or was void" or "fraudulently procured." *See Kropelnicki v. Siegel,* 290 F.3d 118, 129 (2d Cir.2002). Fourth, the Housing Court judgment and Supreme Court order were issued before this action was commenced.

The Court notes that plaintiffs' claims are indistinguishable from others brought by state-court losers seeking vacatur of Housing Court judgments of eviction, which courts in this Circuit routinely dismiss for lack of subject matter jurisdiction under *Rooker–Feldman. See Torres v. City of N.Y.,* No. 09–CV–1894 (KAM), 2009 WL 1346396, at *2 (E.D.N.Y. May 13, 2009) (district court lacks jurisdiction to vacate "the orders of the state courts regarding [plaintiff's] upcoming eviction from her home"); *Trang v. Concris Realty Co.,* No. 05–CV–5441 (RJD)(LB), 2005 WL 1398004, at *2 (E.D.N.Y. June 14, 2005) (federal court lacks jurisdiction over eviction proceedings); *McAllan v. Malatzky,* No. 97–CV–8291 (JGK), 1998 WL 24369, at *2–3 (S.D.N.Y. Jan.22, 1998) (no subject matter jurisdiction where plaintiff attempted to recloak his charges regarding a state housing matter as a violation of his constitutional rights), *aff'd,*173 F.3d 845 (2d Cir.1999); *see also Ashby v. Polinsky,* No. 06–CV–6778 (DLI), 2007 WL 608268, at *1 (E.D.N.Y. Feb.22, 2007) ("[C]ourts in this Circuit ... consistently [hold] that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine.") (internal quotation marks omitted), *aff'd,*328 F. App'x 20 (2d Cir.2009); *Swiatkowski v. Citibank,* No. 10–CV–114 (JFB), 2010 WL 3951212, at *11 (E.D.N.Y. Oct.7, 2010).

*5 Moreover, even giving plaintiffs the benefit of the doubt as *pro se* litigants, plaintiffs wholly fail to present in the amended complaint an independent federal question or other basis for invoking the jurisdiction of this Court. Although plaintiffs have couched their amended complaint, in part, in terms of "various civil and constitutional rights violations, [it] essentially amounts to an [appeal of] the disposition of the [Housing Court] action."*Swiatkowski,* 2010 WL 3951212, at *11 (quoting *Swiatkowski v. New York,* 160 F. App'x 30, 32 (2d Cir.2005)). For all of these reasons, the Court lacks subject matter jurisdiction over plaintiffs' amended complaint under the *Rooker–Feldman* doctrine.

### II. Leave to amend

To the extent that plaintiffs seek to amend their complaint through the hundreds of pages of disjointed and confused

submissions, such leave is similarly DENIED. The standard governing leave to amend, flexible to begin with, is further liberalized for *pro se* plaintiffs. *See* Fed R. Civ. P. 15(a)(2); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). Even under this broad standard, however, the Court maintains its discretion to deny leave to amend "in instances of futility." *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir.2008) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Here, plaintiffs' claims were presented to the Supreme Court and dismissed. Again, having lost in state court, plaintiffs' attempt to accomplish in this Court what they failed to do in state court, and have failed to establish any independent federal question. As with plaintiffs attempts to re-litigate their eviction, these claims fail as a matter of law for lack of subject matter jurisdiction, and repleading would thus be futile. *See Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's claims] is substantive; better pleading will not cure it. Such a futile request to replead should be denied.").

Moreover, having taken great pains to review these submissions in their entirety, the Court concludes that, even if the claims were not barred under the *Rooker–Feldman* doctrine, a complaint amended to include plaintiffs' muddled fraud and malpractice claims would not survive a motion to dismiss for failure to state a claim under the *Twombly* and *Iqbal* plausibility standard for federal pleading, let alone the heightened standard applicable to fraud pleadings under Federal Rule of Civil Procedure 9(b). *See Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d

Cir.1988) (dismissal appropriate where "complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."); *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (per curiam) (dismissal appropriate where complaint is a "labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"); *Iwachiw v. N.Y.C. Bd. of Elections,* 273 F.Supp.2d 224, 227 (E.D.N.Y.2003) (dismissing complaint as "hopelessly unintelligible"). And even in those few snippets where intelligible, plaintiffs' claims are conclusory and wholly unsupported by factual allegations. Indeed, plaintiff Sol Rosen implicitly concedes this point through his multiple requests that this Court aid him in his "investigation" to gather evidence of his alleged fraud. *See, e.g.,* Letter dated April 29, 2011 (requesting that the Court order the appointment of accountants and law firms to investigate and recover losses occasioned by the alleged fraud).

## CONCLUSION

**\*6** For the above reasons, defendant's motion to dismiss is GRANTED and plaintiffs' complaint is DISMISSED in its entirety for lack of subject matter jurisdiction. Leave to amend is DENIED as futile. The Clerk of Court is directed to enter Judgment accordingly and to close the case. The Clerk is further directed to transmit a copy of this Order to both plaintiffs *pro se* via U.S. Mail at the addresses listed on the docket for each plaintiff.

SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2011 WL 2550733

Footnotes

1    Plaintiff did not file this action *in forma pauperis,* and, therefore, the sua sponte screening procedures of 28 U.S.C. § 1915 do not apply.

2    Reference to pages of Plaintiffs' submissions use the page numbers assigned by the Court's Electronic Case Filing system.